Williams v. Citigroup

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term, 2010

(Argued: April 13, 2011          Decided: August 11, 2011)

————————————————————————————

LINDA GRANT WILLIAMS,

*Plaintiff-Appellant*,

—v.—

CITIGROUP INC., CITIGROUP GLOBAL MARKETS INC.,

*Defendants-Appellees*.

Docket No. 10-538-cv

————————————————————————————

B e f o r e : LEVAL, KATZMANN, HALL, *Circuit Judges*.

————————

Plaintiff-Appellant Linda Grant Williams appeals from a November 3, 2009 judgment of the United States District Court for the Southern District of New York (Preska, *C.J.*) dismissing her complaint and from the district court's February 8, 2010 order denying her postjudgment motion for reargument and reconsideration of this dismissal and for leave to replead. For the reasons stated below and in an accompanying summary order, we **AFFIRM** the district court's dismissal of plaintiff's federal claims, but **VACATE** the order denying the postjudgment motion and so much of the judgment as retained supplemental jurisdiction over and dismissed plaintiff's state law claims. We **REMAND** for further proceedings consistent with this opinion.

————————

Counsel for Plaintiff-Appellant:          MICHAEL A. BOWSE, Browne Woods George LLP, Los Angeles, Cal. (Lee A. Weiss, Browne Woods George LLP, New York, N.Y., *on the brief*).

Counsel for Defendants-Appellees:    CARMINE D. BOCCUZZI, Cleary Gottlieb Steen &
                                     Hamilton LLP, New York, N.Y. (Leah Brannon,
                                     Cleary Gottlieb Steen & Hamilton LLP,
                                     Washington, D.C., *on the brief*).

_____

PER CURIAM:

Plaintiff-Appellant Linda Grant Williams appeals from a November 3, 2009 judgment of

the United States District Court for the Southern District of New York (Preska, *C.J.*) dismissing

her complaint and from the district court's February 8, 2010 order denying her postjudgment

motion for reargument and reconsideration of this dismissal and for leave to replead.  On appeal,

Williams argues that the district court erred by, *inter alia*, dismissing the complaint without

granting leave to replead, denying the postjudgment motion (through which she sought leave to

replead), and exercising supplemental jurisdiction to deny the remaining state law claims.  We

hold that the district court, in denying the postjudgment motion, applied a standard that

overemphasized considerations of finality at the expense of the liberal amendment policy

embodied in the Federal Rules of Civil Procedure.  Accordingly, we vacate the order denying the

postjudgment motion and so much of the judgment as retained supplemental jurisdiction over

and dismissed Williams's state law claims.[1]  We remand for further proceedings consistent with

this opinion.

## BACKGROUND

We set forth below the relevant facts as alleged in the complaint.  Williams is an attorney

licensed in the state of New York who specializes in structured finance.  She has developed a

_____

[1] In an accompanying summary order filed today, we affirm the district court's dismissal
of Williams's federal claims.

2

patent-pending structure for Airline Special Facility bonds ("ASF bonds"), which are issued by municipalities to finance the construction and renovation of airport terminals. According to Williams, her structure is superior to that of existing ASF bonds and would provide benefits to airlines, municipalities, bondholders, and underwriting banks if it were adopted.

Defendant-Appellee Citigroup Inc., through its wholly owned subsidiary Citigroup Global Markets Inc. (together, "Citigroup"), is a major underwriter of ASF bonds. Williams began performing legal work for Citigroup while she was a partner at the law firm of Thelen Reid & Priest. At the suggestion of a Citigroup employee, Williams joined Pillsbury Winthrop Shaw Pittman, LLP ("Pillsbury") — a law firm that had a strong preexisting business relationship with Citigroup — as an equity partner. While at Pillsbury, Williams marketed her structure to Citigroup. Although a Citigroup executive responsible for ASF bond underwriting initially responded to her proposal with enthusiasm, Citigroup ultimately declined to adopt Williams's structure. Eventually, Pillsbury "forced" Williams to leave the firm. She thereafter became "Of Counsel" to Greenberg Traurig, LLP ("Greenberg") pursuant to an employment contract. Greenberg later terminated that contract.

The complaint alleges that Citigroup, along with various rating agencies, airlines, and municipalities, conspired to block the use of Williams's structure to issue ASF bonds. Williams asserts that the acts in furtherance of this alleged conspiracy included, *inter alia*, terminating or transferring Citigroup employees who supported implementing Williams's structure; objecting to Williams's efforts to patent her structure; demanding that Williams's employers sever their relationships with her; pressuring another investment bank to terminate its two-year license of Williams's structure; and issuing new ASF bonds with terms that impeded the possibility of

3

refinancing those bonds using Williams's structure. Williams avers that Citigroup and its co-conspirators took these actions to protect the profits that they derived from the existing secondary trading market for ASF bonds, which she claims would disappear if her structure were adopted.

Based on these allegations, Williams's complaint asserts eight causes of action. The first through fifth causes of action (the "federal claims") allege that Citigroup violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1-2, by engaging in various conspiracies to boycott her structure and by monopolizing, attempting to monopolize, and conspiring to monopolize the ASF bond market. The sixth through eighth causes of action (the "state law claims") respectively allege that Citigroup violated New York's Donnelly Act, N.Y. Gen. Bus. L. § 340;[2] that Citigroup tortiously interfered with Williams's employment contracts with Pillsbury and Greenberg; and that Citigroup tortiously interfered with Williams's business relationships with those firms.

On January 9, 2009, Citigroup moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint with prejudice. It urged the court to dismiss the federal claims for failure to state a claim and then to decline to exercise supplemental jurisdiction over the state law claims or, if it elected to retain jurisdiction over those claims, to dismiss them.

By memorandum and order dated November 2, 2009, the district court granted the motion to dismiss. It dismissed the federal claims on the ground that Williams failed to satisfy the pleading standard set forth in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and *Bell Atlantic*

---

[2] The Donnelly Act, New York's antitrust statute, was modeled on the Sherman Act and has generally been construed in accordance with federal precedents. *X.L.O. Concrete Corp. v. Rivergate Corp.*, 634 N.E.2d 158, 161 (N.Y. 1994).

4

*Corp. v. Twombly*, 550 U.S. 554 (2007), due to the absence of factual allegations plausibly suggesting that Citigroup violated the Sherman Act. *See Williams* v. *Citigroup, Inc.*, No. 08 CV 9208(LAP), 2009 WL 3682536, at *2-8 (S.D.N.Y. Nov. 2, 2009). Notwithstanding Citigroup's request that the state law claims be dismissed without prejudice so as to allow reassertion in state court, the district court went on to consider whether the exercise of supplemental jurisdiction over the remaining claims was warranted. Acknowledging that the relevant factors "usually point toward dismissal" of state law claims without prejudice when the federal claims are dismissed before trial, the court nonetheless concluded that retention of jurisdiction was proper because the state law claims could "'be determined without further trial proceedings and without entanglement with any difficult issues of state law.'" *Id.* at *8 (quoting *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993)). The court then dismissed the Donnelly Act claim based on the same deficiencies it detected in the federal claims, and dismissed the tortious interference claims for failure to allege certain elements required by New York law. *Id.* at *8-10. On the day following the district court's ruling, the clerk entered final judgment.

On November 17, 2009, Williams timely moved for reargument and reconsideration pursuant to Federal Rules of Civil Procedure 59(e) and 60(b) and Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules"). Through this motion (the "postjudgment motion"), Williams sought to reopen the judgment and obtain leave to amend her original complaint so as to attempt to remedy the pleading defects identified in the dismissal order. Williams's counsel previewed the proposed amendments in a fifteen-page declaration accompanying the motion.

5

The district court denied the postjudgment motion in a brief order dated February 8, 2010, which reads in pertinent part:

> Plaintiff has not . . . demonstrated any basis for the extraordinary remedy of reconsideration.  Although she submits a declaration of counsel in support of the motion — an affidavit expressly prohibited by Local Civil Rule 6.3 — she does not point to any matter which the Court overlooked in dismissing the action.  Also, she fails to indicate any reason why she was justifiably ignorant of the facts set forth in counsel's declaration — facts which by and large reiterate matters which apparently occurred years ago.
>
> Plaintiff also does not explain why she should be granted leave to replead at this stage when she failed to request an opportunity to replead in the first instance.
>
> Accordingly, the motion for reconsideration and reargument is denied.

App. 44 (citation omitted).  This appeal followed.

## DISCUSSION

On appeal, Williams argues that the district court erred by, *inter alia*, dismissing the complaint without granting leave to replead, denying the postjudgment motion, and exercising supplemental jurisdiction so as to dismiss the state law claims with prejudice.

A.    Failure To Grant Leave To Replead *Sua Sponte*

First, we address Williams's assertion that the district court erred by dismissing the complaint and closing the case without granting leave to replead *sua sponte*.  "We review a district court's denial of leave to amend for abuse of discretion."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).  We have described the contention that "the District Court abused its discretion in not permitting an amendment that was never requested" as "frivolous."  *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (per curiam); *accord Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011).  Accordingly, we see no abuse of

6

discretion in the district court's failure to grant leave to replead *sua sponte*.

B.      Denial of the Postjudgment Motion

Williams also argues that the district court erred by denying the postjudgment motion. We review the district court's denial of a postjudgment motion for leave to replead for abuse of discretion. *See In re Assicurazioni Generali, S.P.A.*, 592 F.3d 113, 120 (2d Cir. 2010); *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). A district court abuses its discretion when its ruling "rests on an error of law" or "cannot be located within the range of permissible decisions." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001).

In reviewing the district court's denial of this motion, we are mindful of the nature of the relief that Williams sought: namely, leave to amend her complaint. In the ordinary course, the Federal Rules of Civil Procedure provide that courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). This permissive standard is consistent with our "strong preference for resolving disputes on the merits." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (internal quotation marks omitted). Where, however, a party does not seek leave to file an amended complaint until after judgment is entered, Rule 15's liberality must be tempered by considerations of finality. As a procedural matter, "[a] party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to [Rules] 59(e) or 60(b)." *Ruotolo*, 514 F.3d at 191; *see also Nat'l Petrochem. Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 245 (2d Cir. 1991) ("Unless there is a valid basis to vacate the previously entered judgment, it would be contradictory to entertain a motion to amend the complaint."). "[T]o hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the

7

expeditious termination of litigation." *Nat'l Petrochem.*, 930 F.2d at 245 (quoting 6 Charles

Alan Wright et al., *Federal Practice and Procedure* § 1489 (2d ed. 1990)).

The standards we have developed for evaluating postjudgment motions generally place

significant emphasis on the "value of finality and repose." *In re Frigitemp Corp.*, 781 F.2d 324,

327 (2d Cir. 1986). Our precedents make clear, however, that considerations of finality do not

always foreclose the possibility of amendment, even when leave to replead is not sought until

after the entry of judgment. Thus, we have stated that "in view of the provision in rule 15(a) that

'leave [to amend] shall be freely given when justice so requires,' it might be appropriate in a

proper case to take into account the nature of the proposed amendment in deciding whether to

vacate the previously entered judgment." *Ruotolo*, 514 F.3d at 191 (alteration in original)

(quoting earlier version of Rule 15) (other internal quotation marks omitted); *see also State*

*Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990)

("When the moving party has had an opportunity to assert the amendment earlier, but has waited

until after judgment before requesting leave, a court may exercise its discretion [to grant leave to

amend] more exactingly."). Under these formulations, postjudgment motions for leave to

replead must be evaluated with due regard to both the value of finality and the policies embodied

in Rule 15.

Particularly instructive in this respect is the Supreme Court's decision in *Foman v. Davis*,

371 U.S. 178 (1962). *Foman* involved an action to enforce an alleged oral agreement regarding

the amount that the plaintiff stood to inherit from her father's estate. The district court dismissed

the complaint for failure to state a claim on the ground that the alleged oral agreement was

unenforceable under the statute of frauds. The day after judgment was entered, the plaintiff

8

moved to vacate the judgment and to amend her complaint to seek recovery in quantum meruit. The district court denied that motion. *Id.* at 179. The Supreme Court reversed, construing the motion to vacate as filed pursuant to Rule 59(e) and holding that the district court abused its discretion in denying leave:

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Id.* at 182 (citation omitted).

Against this background, we turn to the district court's stated reason for denying the postjudgment motion for leave to replead. The district court wrote in explanation, "Plaintiff . . . does not explain why she should be granted leave to replead at this stage when she failed to request an opportunity to replead in the first instance." App. 44.

We conclude that the denial of the motion for this reason was not a proper exercise of the district court's discretion, as the district court applied a standard that cannot be reconciled with the Supreme Court's holding in *Foman*. The district court apparently believed that a motion for leave to replead is not timely unless made "in the first instance." The court did not explain precisely what it meant by "in the first instance." In the circumstances of this case, however, it can only have meant one of two things: that the plaintiff was under obligation to seek leave to

9

replead either immediately upon answering the motion to dismiss the complaint (without yet knowing whether the court will grant the motion, or, if so, on what ground), or immediately upon receipt of the court's ruling granting the motion and prior to the entry of judgment thereupon. Regardless which of the two the court had in mind, *Foman* makes unmistakably clear there is no such rule. The plaintiff in *Foman* did not seek leave to replead either together with her response to the motion to dismiss, or indeed prior to the district court's entry of judgment. The motion was made postjudgment. Nonetheless, the Supreme Court, identifying "undue delay" as an appropriate reason that might be given for denial of such a motion, ruled that the district court abused its discretion and violated the liberal spirit of Rule 15 by denying the motion. The *Foman* holding cannot be reconciled with the proposition that the liberal spirit of Rule 15 necessarily dissolves as soon as final judgment is entered.

Citigroup also argues that the denial of the postjudgment motion was justified on the ground that the proposed amendments would not remedy the deficiencies in Williams's claims. It is well established that "[l]eave to amend need not be granted . . . where the proposed amendment would be 'futil[e].'" *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18 (2d Cir. 1997) (second alteration in original) (quoting *Foman*, 371 U.S. at 182). Therefore, on remand, the district court should address whether the proposed amendments would be futile. *See, e.g.*, *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198-99 (2d Cir. 1990).[3]

---

[3] The district court's order denying the postjudgment motion noted that the declaration of Williams's counsel accompanying the motion, which presented the factual allegations underlying the proposed amendments, was submitted in violation of Local Rule 6.3. This Local Rule prohibits the filing of affidavits in support of motions for reconsideration or reargument absent court order. We leave it to the district court to decide on remand whether to exercise its discretion under Local Rule 6.3 to permit the filing of the declaration or instead require the submission of a proposed amended pleading in some other form. *See, e.g.*, *Kassner v. 2nd*

10

C.      Exercise of Supplemental Jurisdiction To Dismiss the State Law Claims with Prejudice

For the same reasons as apply to the federal claims, we affirm the court's initial dismissal of the state law claims, but vacate the court's denial of the postjudgment motion. We construe the postjudgment motion as seeking leave to amend the complaint in ways that relate not only to Williams's federal claims, but also to her state law claims. On remand, the court should consider whether Williams's proposed amendments would cure the deficiency in the pleading of the state law claims or otherwise alter its decision to exercise supplemental jurisdiction to dismiss the state law claims with prejudice.[4]  Accordingly, we vacate so much of the court's judgment as dismissed the state law claims with prejudice.

## CONCLUSION

For the reasons stated above and in our accompanying summary order, we **AFFIRM** the district court's dismissal of the federal claims, but **VACATE** the order denying the postjudgment

---

*Avenue Delicatessen Inc.*, 496 F.3d 229, 244-45 (2d Cir. 2007).

[4] If, on remand, the district court is again presented with the discretionary decision whether to decline supplemental jurisdiction over the state law claims, *see* 28 U.S.C. § 1367(c), it must "balance[] the traditional 'values of judicial economy, convenience, fairness, and comity'" in exercising its discretion. *Kolari v. N.Y. Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). The district court's assessment of these factors should, in our view, involve consideration of the pleading standard that a New York court would apply in evaluating the sufficiency of Williams's complaint. It appears to us that this standard is more lenient than the "plausibility" standard applicable in federal courts, *compare Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-53 (2009), *with ABN Amro Bank, N.V. v. MBIA Inc.*, — N.E.2d —, 2011 N.Y. Lexis 1752, at *25-26 (N.Y. June 28, 2011), and at the very least that New York's state courts have not yet adopted the *Iqbal/Twombly* pleading standard with respect to claims under the Donnelly Act, *see* 4B Robert L. Haig, *Commercial Litigation in New York State Courts* § 89:37 (3d ed. 2010). To the extent that Williams would have a better chance of pleading viable state law claims under the standard that New York's courts have chosen, we question whether the values of fairness and comity would be served by preventing her from pursuing those claims in that forum.

11

motion for leave to replead and so much of the judgment as retained supplemental jurisdiction over and dismissed the state law claims. We **REMAND** for further proceedings consistent with this opinion. Any further appeal will be referred to this panel, and the party taking appeal shall advise the Clerk of Court of this direction.