19-447-cv
*Kairam v. West Side GI, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of December, two thousand nineteen.

PRESENT:  ROSEMARY S. POOLER,
JOSEPH F. BIANCO,
            *Circuit Judges*
JENNIFER CHOE-GROVES,
            *Judge*.[1]

---

INDIRA KAIRAM, M.D.,

            *Plaintiff-Appellant*,                    19-447-cv

            v.

WEST SIDE GI, LLC,

            *Defendant-Appellee*,

---

FOR PLAINTIFF-APPELLANT:          ELIZABETH SHIELDKRET, Forest Hills, New York.

FOR DEFENDANT-APPELLEE:          JEFFREY A. CAMHI (Mercedes Colwin, Ryan Sestack, *on the brief*), Gordon Rees Scully Mansukhani, LLP, New York, New York.

---

[1] Judge Choe-Groves, of the United States Court of International Trade, sitting by designation.

Appeal from a judgment of the United States District Court for the Southern District of New York (Torres, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED IN PART** and **VACATED IN PART**, and the case is **REMANDED** for further proceedings.

Plaintiff-Appellant Indira Kairam, M.D. ("Dr. Kairam") asserts claims against Defendant-Appellee West Side GI, LLC ("WSGI") under the Equal Pay Act ("EPA"), the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Defend Trade Secrets Act ("DTSA"). The district court granted WSGI's motion to dismiss the Second Amended Complaint ("SAC") for failure to state a claim and denied leave to amend as futile. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

"We review de novo the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). "[A] discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss." *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014). Instead, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

2

When a district court denies leave to amend as futile, our review of that legal conclusion is de novo. *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224 (2d Cir. 2017).

## I.    The EPA Claim

The EPA "prohibits employers from discriminating among employees on the basis of sex by paying higher wages to employees of the opposite sex for 'equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999) (quoting 29 U.S.C. § 206(d)(1)). To establish an EPA claim, a plaintiff must demonstrate that "i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions." *Id.* (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742 (1998)). A "plausible EPA claim must include 'sufficient factual matter, accepted as true' to permit 'the reasonable inference' that the relevant employees' job *content* was 'substantially equal.'" *Port Auth. of N.Y. & N.J.*, 768 F.3d at 256 (quoting *Iqbal*, 556 U.S. at 678).

Dr. Kairam's EPA claim is based on WSGI's alleged failure to pay her $100,000 salary for administrative billing work, while paying Dr. Peter Distler his $100,000 salary for administrative work relating to the Gould Practice. We agree with the district court that Dr. Kairam fails to allege that her position was "substantially equal" to Dr. Distler's. The SAC alleges details about Dr. Kairam's position, including, among other things, that she "analyze[d] patterns to see whether particular doctors were experiencing problems with particular insurers" and "analyze[d] denials to improve billing procedures." App'x at 23. As to Dr. Distler's position, however, the SAC alleges only that he was paid to "'run the Gould Practice,' which involved administrative duties at WSGI."

3

*Id.* That single allegation relating to Dr. Distler's position does not allow for even a reasonable inference that the content of the two positions was substantially equal. Accordingly, we agree that the SAC fails to plausibly allege an EPA violation.[2]

## II. The ADEA Claim

The ADEA prohibits employers from discriminating against any individual in the "compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To state an ADEA claim, a plaintiff must allege that his employer took an adverse action against him and that age was the but-for cause of the adverse action. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015).

Dr. Kairam's ADEA claim stems from her allegation that "the WSGI Board began telling members that it had voted to institute a policy that required mandatory retirement." App'x at 24. We agree with the district court that Dr. Kairam fails to allege an adverse employment action because she does not allege that WSGI instituted the mandatory retirement policy. As shown by exhibits attached to the SAC, the WSGI Board's vote did not operate to implement the policy. WSGI's operating agreement prohibits amendment "except by an instrument in writing executed by a Super-majority of the Board," *id.* at 82, and the WSGI Board's email about its vote on the policy "recommends that the Members approve the [retirement policy] at a Special Meeting of the Members," *id.* at 99. Moreover, at oral argument in the district court and before this Court, Dr. Kairam's counsel conceded that WSGI has not yet forced anyone to retire. Thus, we agree with

---

[2] We note that the district court also reasoned that the allegation that WSGI offered Dr. Kairam and Dr. Distler the same salary foreclosed any EPA claim, even if WSGI paid Dr. Distler and failed to pay Dr. Kairam. This Court has never held that a promise to pay equal wages alone precludes an EPA claim, and any such holding would be inconsistent with the plain statutory language, which prohibits "paying" different "wages" to employees of the opposite sex. 29 U.S.C. § 206(d)(1).

4

the district court that Dr. Kairam has not alleged an adverse employment action to support her ADEA claim.

## III. The Title VII Claim

To state a discrimination claim under Title VII, "a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 86. An actionable adverse employment action is a "'materially adverse change' in the terms and conditions of employment." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Vega*, 801 F.3d at 85 (internal quotation marks omitted) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)). Although a complaint "need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination" to state a Title VII claim, it must offer "plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

Dr. Kairam's Title VII claim arises from Dr. Distler's alleged refusal to refer patients from the Gould Practice to her because of her color, sex, and national origin. The SAC alleges that, when Dr. Kairam asked during an all-doctors meeting why Dr. Distler had not referred her any patients, Dr. Distler responded that the Gould Practice was "a boutique practice" and that those patients wanted to see a doctor who "looks like" Dr. Gould, a white male. App'x at 24. To the extent that the district court concluded that the SAC did not plausibly allege discriminatory

5

motivation, we disagree. Dr. Distler's alleged comment—that Dr. Kairam was not referred patients because she did not "look like" a white male—is sufficient at this stage to support a reasonable inference of discriminatory motivation. We agree, however, with the district court's conclusion that Dr. Kairam fails to allege an adverse employment action. The SAC does not allege, for example, that Dr. Distler's refusal to refer Dr. Kairam patients from the Gould Practice affected her compensation or that the refusal significantly diminished her responsibilities. Dr. Kairam argues that the lack of Gould Practice patients deprived her of income from procedure fees, but the SAC does not contain any allegation to that effect. Indeed, the allegation that Dr. Kairam relies on states only that she received fees for each procedure she performed at her former practice. That allegation does not shed light on how Dr. Kairam is compensated at WSGI, let alone whether the failure to refer Gould Practice patients to her affected that compensation. Accordingly, although Dr. Kairam alleges discriminatory motive, her Title VII claim was properly dismissed for failure to allege an adverse employment action.

## IV. The DTSA Claim

The DTSA provides a federal cause of action for trade secret misappropriation. 18 U.S.C. § 1836(b). The statute defines a "trade secret" to include "all forms and types of financial, business, scientific, technical, economic, or engineering information, including . . . methods, techniques, processes, procedures, [and] programs," but only if "(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *Id.* § 1839(3). "Misappropriation" includes "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was

6

acquired by improper means." *Id.* § 1839(5). The term "improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." *Id.* § 1839(6)(A).

Dr. Kairam's DTSA claim is based on her providing WSGI with a template "to optimize billing." App'x at 23. We agree with the district court that Dr. Kairam fails to allege that WSGI misappropriated her billing template. In fact, the SAC lacks any allegation about the circumstances under which Dr. Kairam provided the billing template to WSGI. Dr. Kairam argues that she was induced to provide the template to WSGI by false promises to pay her for it, but, again, the SAC does not allege as much. We further conclude that Dr. Kairam fails to plausibly allege that the template is a trade secret. She does not allege, for example, how the template derives independent economic value from not being generally known to others or what steps she took to keep the template secret. Accordingly, Dr. Kairam's DTSA claim was properly dismissed.

## V.    Leave to Amend

Although the district court properly dismissed Dr. Kairam's federal claims, it erred in denying her request for leave to amend as futile. Rule 15's liberal standard instructs that leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). That standard "is consistent with our 'strong preference for resolving disputes on the merits.'" *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). Although Dr. Kairam has amended her complaint twice, she has not yet done so with the benefit of a ruling. *See Loreley Fin. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."). Further, during oral argument in the district court, counsel for Dr. Kairam

7

requested leave to amend three times in response to indications from that court that the claims were insufficiently pled. We disagree with the district court that the above-described pleading defects are substantive. They are not necessarily fatal, but instead stem from either the failure to plead a necessary element of a claim or to provide details sufficient to support a plausible claim. Thus, the district court erred in concluding that any further amendment would necessarily be futile, and Dr. Kairam should be given an opportunity to cure the defects on remand.

\* \* \*

We have considered the parties' remaining arguments and conclude that they are without merit. For the foregoing reasons, we **AFFIRM IN PART** and **VACATE IN PART** the judgment of the district court, and **REMAND** with instructions to allow Dr. Kairam to amend her complaint.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8