*Kainz v. Bernstein*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of December, two thousand twenty.

Present:
> GUIDO CALABRESI,
> ROBERT A. KATZMANN,
> RICHARD J. SULLIVAN,
> *Circuit Judges*.

_____

Roman Kainz,

> *Plaintiff-Appellant*,

> v.                                                        20-1187


Bruce Bernstein, William Phoenix,

> *Defendants-Appellees*,

Richard K. Abbe, Donald E. Stout, Salvatore Giardina, John Engelman, Andrew D. Perlman, Xpresspa Group, Inc., FKA Form Holdings Corp., Andrew H. Heyer,

> *Defendants*.


_____

For Plaintiff-Appellant:                                    MICHAEL JAMES MALONEY (Rosanne E. Felicello, *on the brief*), Felicello Law P.C., New York, N.Y.

For Defendants-Appellees:                                    FRANCIS J. EARLEY (John P. Sefick and Ellen Shapiro, *on the brief*), Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo P.C., New York, N.Y.

Appeal from a judgment of the United States District Court for the Southern District of New York (Stanton, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-appellant Roman Kainz was a minority shareholder in XpresSpa Holdings, LLC. He claims that he was misled into signing a joinder agreement as part of a merger involving that company. Kainz's sole remaining claim is for fraudulent inducement against defendants-appellees Bruce Bernstein and William Phoenix. The district court (Stanton, *J.*) granted defendants' motion to dismiss and denied Kainz's subsequent motions for reconsideration, for vacatur of the judgment, and for leave to amend. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**A. Background**

In 2016, XpresSpa Holdings, LLC ("Old XpresSpa") entered into a merger agreement with an entity called Form Holdings Corp. ("New XpresSpa").[1] As a condition of closing, the merger agreement required that unitholders representing at least 95 percent of Old XpresSpa's outstanding units sign a Joinder Agreement. Since Kainz owned less than five percent of Old XpresSpa's outstanding units, the 95 percent threshold was met without Kainz's signing of a Joinder

---

[1] As this appeal is from a motion to dismiss, all facts are drawn from the complaint and documents incorporated therein by reference.

Agreement, and the merger closed on December 23, 2016. Nevertheless, Bernstein and Phoenix still wanted Kainz to sign the Joinder Agreement. In an effort to convince Kainz to sign, Bernstein wrote the following by email to Kainz on December 27, 2016: "[W]ithout signing the Joinder Agreement, you will not be able to receive the new securities in [New XpresSpa] that will be given in exchange for the [Old XpresSpa] shares." Joint App'x 39–40 ¶ 114. Kainz then signed the Joinder Agreement, but now claims that Bernstein's statement fraudulently induced him to sign.

The district court dismissed Kainz's complaint on the grounds that he failed to plausibly allege justifiable reliance and injury causation. A month after judgment was issued, Kainz filed a motion to reconsider, a motion to vacate the judgment, and a motion seeking leave to file an amended complaint. The district court denied all three motions, and this appeal followed.

## B. Motion to Dismiss

We review dismissal under Federal Rule of Civil Procedure 12(b)(6) de novo. *Fink v. Time Warner Cable*, 714 F.3d 739, 740–41 (2d Cir. 2013). To state a claim for fraudulent inducement under New York law, a plaintiff must allege: "(1) a representation of material fact, (2) which was untrue, (3) which was known to be untrue or made with reckless disregard for the truth, (4) which was offered to deceive another or induce him to act, and (5) which that other party relied on to its injury." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 580 (2d Cir. 2005).[2]

Kainz argues that the district court erred because it focused its analysis on the closing of the merger rather than on the distribution of the merger consideration, and thus failed to address Kainz's operative theory of the case. Kainz contends on appeal that his damages did not arise from the approval of the merger, but instead from the fact that the Joinder Agreement bound him to

---

[2] Unless otherwise indicated, in quoting cases, we omit all internal citations, quotation marks, footnotes, and alterations.

3

onerous escrow provisions and included a release of claims against Bernstein and others. In other words, Kainz claims that Bernstein induced him to give up control of his shares (via the escrow provisions) and give up certain legal rights (via the releases) by falsely stating that Kainz would not get his New XpresSpa shares without signing the Joinder Agreement.

This argument is unavailing. First, Kainz did not make these escrow- and release-based arguments when briefing the motion to dismiss. Kainz's opposition to the motion to dismiss contains only a handful of references to the escrow provisions, all of them in the context of scienter, and only one passing mention of the legal releases. The district court correctly addressed the theories expounded by the parties at the time. *See Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 252–53 (2d Cir. 2017) ("It is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal.").

Second, even accepting Kainz's new theory, he has not alleged that he was actually injured by signing the Joinder Agreement. As noted above, Kainz identifies two ways in which executing the Joinder Agreement caused him harm. First, he claims that without signing the Joinder Agreement, his merger consideration would not have been placed into escrow. Second, he asserts that by signing the agreement, he waived certain legal claims. For the reasons explained below, neither argument has merit.

Starting with the escrow issue, Kainz's theory is contradicted by § 1.10(c) of the merger agreement, which plainly provides that Kainz's shares would have been placed in escrow even if he had not signed the Joinder Agreement. *See* Joint App'x 127, 177 §§ 1.10, 7.7.[3] So Kainz's

---

[3] Though the merger agreement is not attached to the complaint, we may consider it because it is referenced and quoted throughout the complaint and is thus incorporated by reference. *See Sira v. Morton*, 380 F.3d 57, 66–67 (2d Cir. 2004).

assertion that by signing the Joinder Agreement he unintentionally caused his shares to be escrowed when they otherwise would not have been is simply mistaken.[4]

Kainz suggests that notwithstanding the terms of the merger agreement, the merging companies did not have the authority to place any of his merger consideration into post-closing escrow unless he signed the Joinder Agreement. In a nutshell, Kainz's position is that the merger agreement's post-closing escrow term was rendered ineffective by virtue of Old XpresSpa's operating agreement, which provided that in the event of a merger, no unitholder "shall be required to execute and deliver any [other] agreements unless all [unith]olders are so required." J. App'x 307. Kainz reasons that because of that provision, his merger consideration could not be placed into escrow under the terms of the merger agreement (and the escrow agreement affixed thereto) unless he voluntarily decided to sign the Joinder Agreement.

In explaining his theory, however, Kainz does not point to any supporting precedent. Indeed, in various opinions, the Delaware Court of Chancery has implicitly rejected his position by blessing post-closing escrow provisions without conditioning their use on the selling shareholders becoming parties to the merger agreement. *See Cigna Health and Life Insurance Co. v. Audax Health Solutions, Inc.*, 107 A.3d 1082, 1091–92 (Del. Ch. 2014); *In re OPENLANE, Inc.*, C.A. No. 6849-VCN, 2011 WL 4599662, at *8 (Del. Ch. Sept. 30, 2011). And while both *Cigna* and *OPENLANE* were decided in the context of a selling corporation, we have located nothing in their reasoning or in any relevant statutes that would suggest that their analysis would not apply to a sale of an LLC. Accordingly, we have identified no support in Delaware law for Kainz's

---

[4] Though Kainz now argues that the escrow terms for unitholders who signed a Joinder Agreement are more onerous than the escrow terms for unitholders who did not sign a Joinder Agreement, we will not consider this argument because it was made for the first time in Kainz's reply brief. *See D'Alessio v. S.E.C.*, 380 F.3d 112, 123 (2d Cir. 2004).

argument that his merger consideration could not have been placed into escrow without his having executed the Joinder Agreement.

Kainz's fallback theory of damages is based on a few passing references in the complaint to his having been harmed by the Joinder Agreement's "broad releases" of unspecified "valuable legal claims." Appellant's Br. at 16. While that perhaps could have formed the makings of a theory of damages, Kainz fails to identify what specific claims he would have asserted had he not signed the Joinder Agreement or the value of those claims. Absent such allegations, any assertion that he was harmed by the loss of these unidentified legal rights is merely speculative.

Accordingly, Kainz fails to allege any harm that stems from his having executed the Joinder Agreement. That alone is fatal to his fraudulent inducement claim.

### C. Post-Judgment Motions

We turn next to the denial of Kainz's post-judgment motions for reconsideration, for vacatur of the judgment, and for leave to amend, which we review for abuse of discretion. *See In re Assicurazioni Generali, S.P.A.*, 592 F.3d 113, 120 (2d Cir. 2010).

Though we agree that it would have been preferable if the district court stated its reasons for denying Kainz's post-judgment motions, we nevertheless affirm that denial. "[A] party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to Rules 59(e) or 60(b)." *Williams v. Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011). Kainz's motions for reconsideration and vacatur did not identify any proper basis for such relief. *See Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142–43 (2d Cir. 2020) (listing the limited reasons for which Rule 59(e) or 60(b) relief is warranted, such as mistake, change in law, or newly discovered facts). Instead, Kainz argued that the district court's motion-to-dismiss ruling "misapprehended" Kainz's theory of the case. But, as discussed above, Kainz

6

had not actually advanced that theory in his motion-to-dismiss briefing. We therefore find no abuse of discretion in the district court's denial of Kainz's motion for reconsideration and vacatur.

In any event, Kainz's proposed amended complaint does not cure the key deficiency of the original complaint because it still does not allege that Kainz suffered a cognizable injury as a result of having executed the Joinder Agreement. Though Federal Rule of Civil Procedure 15 provides that leave to amend shall be "freely given," courts are "more exacting[]" when leave to amend is sought after judgment has issued. *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990). Since Kainz did not move to amend until after judgment was issued, and since his proposed amended complaint still does not state a claim for fraudulent inducement, we conclude that leave to amend was properly denied.

We have considered Kainz's remaining arguments on appeal and have found in them no basis for reversal. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7